IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LATRINA CULLUM, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3028 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JANICE AXDAHL, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on filing no. 34, the Motion for Summary Judgment filed by the defendant, Janice Axdahl. The plaintiff, LaTrina D. Cullum, a prisoner at the Nebraska Correctional Center for Women ("NCCW"), brought this civil rights action against Ms. Axdahl, in her individual and official capacities, pursuant to 42 U.S.C. § 1983. Axdahl served as a member of an Institutional Disciplinary Committee that assessed a penalty against the plaintiff involving a one-month loss of good-time credit. Axdahl is also the Education Coordinator who administers the NCCW legal aide program and supervises the law library at the prison. When the plaintiff sought assistance from the legal aides and from the defendant, in order to appeal the disciplinary decision under the Nebraska Administrative Procedure Act ("A.P.A."), she received no assistance, and the appropriate forms were not provided to her. The plaintiff protests the failure of the NCCW library and legal aide facilities to meet federal Constitutional standards, as exemplified by the treatment she received.

**Background**

I have previously explained in filing no. 31, my Memorandum and Order of March 20, 2006, that much of the relief sought by the plaintiff in her original complaint cannot be

1

obtained in a civil rights action such as this because of the principles expressed in Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997). Those decisions by the U.S. Supreme Court bar civil rights litigation which could implicate the validity of the plaintiff's conviction or of the duration of her confinement, unless the judgment or disciplinary decision under attack has first been set aside in a habeas corpus or similar action.

I noted in filing no. 31, however, that the plaintiff also asserts a claim that the defendant obstructed the plaintiff's right of access to the courts, and thus, that the defendant deprived the plaintiff of First Amendment rights. See Bounds v. Smith, 430 U.S. 817 (1977), and Lewis v. Casey, 518 U.S. 343 (1996).[1]

Therefore, in filing no. 31, I explained that the plaintiff may not attack the disciplinary decision itself, her loss of good time, her deferred release date, or Janice Axdahl's service as a member of the Institutional Disciplinary Committee that rescinded the plaintiff's good-time credit. However, I also ruled that the plaintiff could proceed on her claim that Axdahl, in her individual and/or official capacity, deprived the plaintiff of First Amendment rights. The alleged deprivation of First Amendment rights does not affect the plaintiff's date of release from incarceration and so is not barred from consideration by Heck v. Humphrey and Edwards v. Balisok.

In her verified complaint (filing no. 1), the plaintiff alleged that she tried various times

---

[1]In Lewis v. Casey, 518 U.S. 343, 351-53 (1996), the U.S. Supreme Court stated that, to demonstrate a denial of access to the courts, a plaintiff must point to actual injury attributable to the deficiencies in a prison law library and legal assistance program. Thus, the plaintiff points to the loss of her appeal as the qualifying actual injury, which she attributes to the NCCW library and legal aide program as administered by the defendant, as well as the defendant's refusal to provide the plaintiff with even basic appeal forms.

2

to research how to file an A.P.A. appeal, and she sought the help of NCCW legal aides. However, the legal aides showed no comprehension of what the plaintiff was talking about. The legal aides conferred, but apparently to no avail. Because the defendant is the Education Coordinator in charge of the law library and the legal aides, the plaintiff sought basic assistance from the defendant, but the defendant refused any such assistance. Time passed, and the appeal deadline expired.[2]

In filing no. 38, the plaintiff adds more detail and takes issue with the defendant's Motion for Summary Judgment. The plaintiff explains that, pursuant to a policy of either NCCW administration or the defendant as librarian, legal forms are held in the law library filing cabinets, and inmates are not permitted to "pull" the forms they need from the cabinets. Only prison staff or trained legal aides may do so. When the plaintiff asked for the forms to file an appeal from a disciplinary decision to the district court under the A.P.A., the legal aides did not know what the plaintiff was talking about, and thus, they were unaware of which forms needed to be pulled. The plaintiff then immediately went to "her next available option ... Janice Axdahl." For whatever reason, Axdahl denied knowing

---

[2] For summary judgment purposes, a verified complaint by a pro se plaintiff may serve as the equivalent of an opposing affidavit when the allegations contained therein are based on personal knowledge. See, e.g., Williams v. Adams, 935 F.2d 960, 961 (8th Cir. 1991). Accord Roberson v. Hayti Police Dep't, 241 F.3d 992, 994 (8th Cir. 2001) ("A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment."); Munz v. Michael, 28 F.3d 795, 798-99 (8th Cir. 1994) ("For summary judgment purposes, we must believe the allegations in [the] verified complaint as they are evidence to the same extent as statements in a sworn affidavit."). See also Hartsfield v. Colburn, 371 F.3d 454, 456 (8th Cir. 2004) ("We agree with [plaintiff pretrial detainee] that the allegations made in his verified complaints satisfy affidavit requirements, see 28 U.S.C. § 1746.").

Filing no. 19 is an amendment to the original complaint in which the plaintiff, in response to a query in the Order on Initial Review (filing no. 17 at 1), clarifies her intent to sue the defendant in her individual and official capacities.

what forms were appropriate. Axdahl also referred to the "conflict of interest" which would have arisen if she had tried to help the plaintiff appeal (filing no. 1 at 12), presumably because of her membership on the Committee whose decision the plaintiff wished to appeal.

## Access to the Courts

To state a claim for denial of access to the courts, the plaintiff must establish that the defendant hindered her efforts to pursue a non-frivolous legal claim and that the plaintiff suffered some actual concrete injury as a result. Lewis v. Casey, 518 U.S. 343, 350-54 (1996). In Christopher v. Harbury, 536 U.S. 403, 412-15 (2002), the U.S. Supreme Court explained that an "access to the courts claim" may involve a forward-looking effort to remove an obstacle to prospective litigation or may involve a look backward to vindicate the obstruction or hindrance of a plaintiff's opportunity to obtain judicial relief. The plaintiff's claim is of the "backward-looking" variety. Id. at 413-15:

> The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, e.g., Foster v. Lake Jackson, 28 F.3d 425, 429 (C.A.5 1994); Bell v. Milwaukee, 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (C.A.6 1997) (police coverup extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here. These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

4

Id. at 413-14.

> While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. We indicated as much in our most recent case on denial of access, Lewis v. Casey, *supra*, where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim, id., at 353, and n. 3 ..., and we have been given no reason to treat backward-looking access claims any differently in this respect. It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.

Id. at 414-15.

"[I]n Lewis v. Casey, 518 U.S. 343, 351 ... (1996), quoting Bounds v. Smith, 430 U.S. 817, 825 ... (1977), the [Supreme] Court confirmed that inmates have a constitutional right of access to the courts that obligates prison officials to provide some means, such as a prison law library or a legal assistance program, 'for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."'" Bear v. Kautzky, 305 F.3d 802, 804 (8th Cir. 2002). "In Bounds and Lewis the Supreme Court emphasized that there is no one prescribed method of ensuring inmate access to the courts. A prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices, so long as there is no actual harm to the access rights of particular inmates."

5

Id. at 806.

## NCCW's Means for Ensuring Access to the Courts

In this case, the court need not speculate regarding the minimum standards necessary to fulfill NCCW's duty to ensure its inmates' right of access to the courts, as the defendant has presented evidence of the policy NCCW has adopted to secure that objective. See Operational Memorandum ("OM") No. 116.1.4.4 "Inmate Law Program" (filing no. 35-3 at 1-9). As OM 116.1.4.4 recites, its purpose is to "ensure[] that all inmates at NCCW have reasonable access to the courts, legal representation and information and materials to enable them to pursue legal recourse." Therefore, the persons (perhaps legal counsel for corrections) who drafted OM 116.1.4.4 made the factual and legal determination that both textual materials **and** assistance by trained legal aides are necessary to ensure prisoner access to the courts. That determination must have been based not only on the authors' knowledge of the relevant legal standard but also on a realistic application of the legal standard to the facts, i.e., a factual assessment of the general inability of the prison population to use the array of available legal resources *without* the guidance of trained legal aides. Clearly, the authors of OM 116.1.4.4 determined that legal resources alone cannot fulfill NCCW's obligations to its prisoners.

As Janice Axdahl points out in her Affidavit (filing no. 35-2 at ¶ 10): "The NCCW law library has primary and secondary sources available at the state, district and federal levels to assist the inmate population as it pursues legal matters. The law library also contains numerous volumes on prisoner's rights, civil rights, habeas corpus, and legal research, as well as appropriate reporters, encyclopedias, dictionaries and current statute books." However, the plaintiff attempts to convey how overwhelming and impenetrable that

assortment of material seemed to her, without the appropriate forms or guidance. The defendant argues that the plaintiff previously filed two lawsuits and should have known how to penetrate the maze. However, the defendant fails to address whether, on those other two occasions, the plaintiff was fortunate enough to obtain the assistance she needed, unlike this time.

## Summary Judgment

In her Affidavit (filing no. 35), Axdahl argues that as a non-attorney, she lacks authority to provide legal advice to the plaintiff, and her job description at NCCW does not include providing legal assistance to inmates. When inmates ask Axdahl for legal assistance, she refers them to their case managers or a legal aide. So one important question in this case is whether a request for the appropriate forms to appeal from a final disciplinary decision to the district court under the A.P.A. constitutes a request for "legal advice" or "legal assistance."

Again, reference to the NCCW's own minimum standards for ensuring access to the courts answers that question. Among the enumerated responsibilities of NCCW legal aides, as set forth in OM 116.1.4.4., are the duties to maintain a form file ("file of completed sample forms") (id. at 3), "[a]ssist inmates in utilizing law library materials as well as providing advice and directions in preparing legal documents and letters" (id.), "[a]ssist inmates in the preparation of appeals, grievances and/or correspondence concerning Internal affairs of the Department" (id.), and "[a]ssist ... inmates in the preparation of meaningful filing for the courts" (id. at 4).

Legal aides work under Axdahl's supervision and, to some degree, she selects them and arranges for their training. OM 116.1.4.4 (filing no. 35-3 at 1) provides that a legal aide

7

"will work under the direction of the Education Coordinator." The Education Coordinator also bears at least some responsibility for the effective operation of the legal aide program. OM 116.1.4.4 delegates to the Education Coordinator responsibility for screening candidates for legal aide positions (id. at 2), recommending candidates for approval as legal aides (id.), monitoring the "law library to ensure materials and equipment are being properly maintained in conformity with legal requirements" (id. at 5), and serving as the source from whom office supplies must be requested (id. at 6). She also bears the responsibilities for screening and scheduling law library usage (id. at 7), and for "monitor[ing] the legal aid [sic] on an on-going basis" (id.). Finally, she "coordinates ... to establish training classes for the Inmate legal aides" (id.).

Finally, Axdahl appears to have exclusive responsibility for the contents of the law library. The Education Coordinator maintains the holdings in the law library and is "responsible for ensuring the required materials are available." (Id. at 1.) That duty must have special significance as the OM repeats it (id. at 5): "The Education Coordinator will maintain the holdings in the law library and be responsible for seeing that the required materials are available." OM 116.1.4.4 certainly gives the impression that the Education Coordinator would be the logical person to turn to for assistance if needed materials appear unavailable.

On the record provided by both parties, I cannot grant summary judgment in favor of the defendant. It seems obvious to me that the defendant in both her individual and official capacities failed to meet the standards set forth in OM 116.1.4.4. Of course, the defendant may attempt to argue at trial that OM 116.1.4.4 offers more liberal support than the Constitution requires for the protection of an inmate's right of access to the courts.

Also, the record suggests that somehow, over the years, both Axdahl and the legal aides who work under her direction (filing no. 35-3 at 1) have lost the ability to perform even the most mundane tasks, such as the plaintiff required in this case. Appeals to the District Court under the A.P.A. from prison disciplinary decisions must be both routine and frequent, and, at a minimum, the necessary papers surely include a Notice of Appeal and an Application to Proceed In Forma Pauperis. Not only did the legal aides have no idea what the plaintiff needed, but Axdahl, who has had the title of NCCW Education Coordinator since 1978, holds Bachelors and Masters degrees, has completed continuing education courses and a course in legal research, claimed not to know what forms to use for such an appeal.

Thus, the defendant, in her official capacity, raises doubt about NCCW's ability to meet constitutional standards. If the legal aides and the Education Coordinator could not provide the plaintiff with the basic forms for a standard and routine appeal, the program is very likely not ensuring access to the courts. On the other hand, if the defendant or a legal aide had instead provided the appeal forms to the plaintiff, I cannot agree with the defendant that handing over such standard forms would have constituted legal advice or even "legal assistance." For example, such forms are readily available to the general public on a walk-in basis from state and federal Clerks of Court, who also are barred from providing legal advice or legal assistance.

Thus, the plaintiff's claim of denial of access to the courts survives the defendant's Motion for Summary Judgment on the factual record provided to this court. Nevertheless, despite the legal injury sustained by the plaintiff, I question what issues remain for trial and what remedies would be available if the plaintiff ultimately prevails in this case.

**Remedies**

The plaintiff has established that she suffered the kind of actual concrete injury required by Lewis v. Casey, 518 U.S. 343, 351-53 (1996), i.e., the loss of her appeal.[3] On the factual record provided thus far to the court, it is uncontroverted that: (a) both the NCCW program for ensuring inmate access to the courts, and the defendant personally, provided no assistance to the plaintiff, including the basic forms for an appeal; (b) the legal aides working under the direction of the defendant lacked basic information regarding how to perfect a routine appeal under the A.P.A. to district court, were insufficiently trained to assist the plaintiff in a basic matter, and have apparently failed to maintain forms for that purpose, notwithstanding the requirements of OM 116.1.4.4; and (c) the defendant failed to meet her responsibility to see that "required materials are available" in the law library, at least in the plaintiff's case.

Official Capacity - No Damages

However, the defendant, in her official capacity, i.e., the State of Nebraska, is shielded by sovereign immunity from claims for monetary relief of any kind from the plaintiff. The Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The Eleventh Amendment

---

[3]Causation remains an issue, as the defendant contends that the plaintiff could somehow have managed to file her own appeal even though the legal aides admittedly, and Axdahl allegedly, did not know what forms should be used.

prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, the State's sovereign immunity bars the plaintiff's claim for monetary relief from the defendant in her official capacity.

Individual Capacity - No Damages for Suffering

The Prison Litigation Reform Act ("PLRA"), which applies to cases brought by prisoners, prevents the plaintiff from recovering damages for mental and emotional suffering attributable to the defendant's conduct, as the plaintiff incurred no physical injury. See 42 U.S.C. § 1997e(e): "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Emotional distress is the only kind of compensatory damage relevant to this case.

Individual Capacity - Nominal and Punitive Damages

The requirement of 42 U.S.C. § 1997e(e) that a prisoner demonstrate physical injury to recover damages for mental or emotional injury applies to compensatory damages. Nominal and punitive damages, or declaratory and injunctive relief, are not barred even when compensatory damages are unavailable. Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004), cert. denied, 544 U.S. 1061 (2005); Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Thus, if the plaintiff were to prevail in this action, she could at least recover the typical nominal damages award of $1.00.

However, as to punitive damages, the U.S. Supreme Court has very recently ruled that the Constitution's Due Process Clause does not permit an award of punitive damages

based, even in part, on a desire to punish a defendant for harming persons who are not before the court (i.e., victims whom the parties do not represent), as such an award would amount to a taking of property without due process. Philip Morris USA v. Williams, 127 S.Ct. 1057, 1060, 1063 (2007). Therefore, this court may not presume that the entire population of NCCW has been injured by the defendant's performance of her duties, or, in fact, anyone but the plaintiff; nor may the court assume that the plaintiff's "backward-looking" access claim will recur in the future.

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." Id. at 1062 (citations and internal quotation marks omitted). While a plaintiff may show harm to others in order to demonstrate reprehensible conduct warranting punitive damages, punitive damages may not be awarded to punish a defendant for injury it inflicted upon those who are, essentially, strangers to the litigation. Id. at 1063-64. In this case, thus far, the plaintiff has demonstrated no basis for an award of punitive damages against the defendant. While this court does not agree with the defendant's view of her constitutional obligations, or even of her responsibilities under OM 116.1.4.4, the principles dictating appropriate conduct for a person in the defendant's position were less than entirely clear when the plaintiff turned to her for assistance.

Other

I note that in her complaint (filing no. 1 at 3), the plaintiff lists among the relief requested, that she would appreciate an apology from Ms. Axdahl and that she would like NCCW officials to understand that an inmate's right of access to the courts requires more than a perfunctory answer of "I don't know," when an inmate seeks assistance in filing an

appeal. Those requests seem reasonable.[4] Perhaps the parties can reach an agreement to resolve this matter on the basis of those suggestions, instead of holding an expensive jury trial on the issue of the plaintiff's entitlement to the sum of $1.00.

THEREFORE, IT IS ORDERED:

1.  That filing no. 34, the defendant's Motion for Summary Judgment, is denied;

2.  That Magistrate Judge F.A. Gossett is requested to schedule a settlement conference in this matter;[5] and

3.  That if the parties are unable to settle this matter, Magistrate Judge Gossett is requested to progress this case to a trial by jury before the undersigned district judge on a reasonably expedited basis.

DATED this 12th day of March, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

---

[4]As to the latter request, this Memorandum and Order provides notice to the defendant in her individual and official capacities that the plaintiff was indeed entitled to more assistance than she received.

[5]The plaintiff is reminded that the misconduct report and loss of good time are not matters which can be included in a trial or presumably in any settlement negotiations.